# CALEDONIA COUNTY,

[ Continued from *ante*, page 84.]

---

GRANVILLE C. MEADER *v.* JOSIAH PAGE, *Appellant.*

*Husband and Wife. Agency. Book Account.*

The power of the wife to bind the husband in the management of domestic affairs, is more extensive in case of the absence of the husband for long periods of time, than when he is at home managing his own business.

The defendant worked in New York the most of the time, his wife and family remaining at his home in Ryegate, Vermont, he sending her money and she managing his affairs at home. Upon the death of one of their children, he contracted for a set of grave stones for the child, and sent his wife the money to pay for them. A portion of this money she appropriated in purchasing necessaries for the family in a prudent way, and afterwards when the stones were erected, she borrowed money of the plaintiff to pay for them, promising to repay him in a short time, but failing so to do the plaintiff charged it to the defendant. *Held,* that what the wife did in the premises was within the scope of her apparent agency, and the plaintiff had a right to so understand it; and there was moreover an agency *in fact.*

BOOK ACCOUNT. The case was heard upon the auditor's report at the June Term, 1866, STEELE, J., presiding, when judgment was rendered for the plaintiff; exceptions by defendant.

In respect to item number four, the one in dispute, cash $11.00, the auditor reported as follows : " It appeared that the defendant, about the month of October, 1862, left his home in Ryegate for New York, and has since that time been living and at work in the state of New York, a considerable part of the time, being at home several months at a time, at several different times since leaving home, his wife and family remaining at his residence at Ryegate ; that Mrs. Page

has kept house and managed affairs at home ; that the defendant has from time to time sent home money to his wife to use in taking care of the family ; that in June, 1863, one of the defendant's children died at Ryegate ; that the defendant was at home at the time and agreed with one Jenkins, of Bradford, to furnish a set of grave stones for the child, and also a set for the defendant's father, (who died previously,) at the sum of $25.00.

The defendant then returned to New York, agreeing to send home money to his wife to pay for these grave stones. Jenkins furnished and set up the grave stones, as agreed, where they now stand, and subsequently the defendant sent home money to his wife to pay for them. It so happened when the money was sent the article of flour was rising in price, and had advanced to fifteen dollars per barrel, and Mrs. Page was advised that it would advance higher, perhaps to $20.00, and desiring to provide a supply for the time to come, bought a barrel at §15.00, and at the same time bought several other articles at the store, for family use, and paid out of the money so sent, and hadn't enough left to pay for the stones, when Jenkins should call for it, which was soon expected ; she therefore borrowed $13.00 of the plaintiff, and when Jenkins came she paid for the grave stones therewith, and with other money she had left on hand. Mrs. Page agreed to pay the plaintiff back the money when she borrowed it in two or three weeks, and he called on her for the money, but she not having it paid him two dollars only, and the balance, eleven dollars, not being paid, the plaintiff subsequently charged to the defendant, which is the item No. 4, in his account.

" It did not appear to what extent the defendant gave his wife authority to transact business at home ; he left her there to manage for him at home, what might be necessary to be done, considering their respective situations, and the defendant testified that his wife took care of business pretty well, quite as well as the neighbors generally did and would have done very well, if the neighbors had let her alone.

It did not appear that he ever gave her any specific instructions, or that he left business to be done by any other person than his wife. He had no other agent. It appeared that Mrs. Page took care and

got along at home by her own efforts and with what money her husband sent or gave her from time to time. It did not appear that the defendant ever acknowledged that his wife borrowed any money of the plaintiff or that he ever promised to pay the plaintiff."

*Leslie & Rogers,* for the defendant.

*A. Underwood,* for the plaintiff.

The opinion of the court was delivered by

PECK, J. In relation to the item of $11.00 in the plaintiff's account, it can not be assumed that the credit was given by the plaintiff to the defendant's wife and not to the defendant. The auditor does not so find, and the facts, in the absence of such finding, do not lead to that conclusion. As the defendant was absent at work in New York, and only occasionally at home, and his wife remaining at the defendants residence in Ryegate with his family, managing his affairs at home, it is probable the plaintiff may have expected the payment would be made through the agency of the wife. But this does not show that the plaintiff did not give the credit to the husband, especially as he was sending money home to his wife from time to time as the wants of the family, and the necessity of his business affairs left in charge of his wife, required. The credit must be intended to have been given *in fact* to the defendant.

But it is insisted that the wife had no authority to bind the defendant in the transaction of borrowing this money. This proposition is correct if it is to depend simply on the implied power of a wife arising from the legal relation of husband and wife without reference to the attending circumstances. Nor does the case come within the principle of those cases where the husband abandons his wife, or turns her away without cause, destitute of means of support; for here was no such state of facts. Nor is any express authority shown to borrow money, either generally or in this particular instance. But it is conceded by the defendant's counsel that a wife may bind the husband in certain domestic affairs, such as are usual to intrust with the wife. The extent of this power however depends very much

on the attending facts and circumstances. It is usually more extensive in case of the absence of the husband for long periods of time, than when he is at home managing his own business. But upon the facts reported in this case, there was an agency in *fact* arising from the absence of the husband, and from his having left his wife with the care of the family and in the management of his affairs at home. This agency however was not unlimited. The power must be construed in reference to the nature and extent of the business affairs entrusted to her charge. On this point the report is not very full or explicit. It appears however that the defendant's wife, " kept house and managed affairs at home, and that the defendant from time to time sent home money to his wife to use in taking care of the family," etc. The auditor reports also that, " it did not appear to what extent the defendant gave his wife authority to transact business at home ; he left her there to manage for him at home what might be necessary to be done, considering their respective situations," and that the defendant testified that his wife took care of business pretty well ; quite as well as the neighbors generally did, etc. This shows that the defendant gave his wife some scope for the exercise of her judgment in his business affairs. Considering that she borrowed the money (the $13.00,) to help pay a debt that the defendant himself contracted, and which he directed her to pay, and which she did pay, we think under the circumstances stated in the report, it came within the scope of her agency. It is true the defendant sent his wife money to pay that debt for the grave stones when they should be delivered and set up, but as flour was rising in price, and she being advised it would soon be still higher, she judged it prudent and good economy to buy a barrel of flour for the family with a portion of the money, which she did at $15.00, and some other articles at the store for family use, and borrowed the $13.00 to make up with what she had, a sum sufficient to pay the debt for the grave stones. The flour and other articles were for the use of the family, and must be intended as necessaries in kind ; and it is not found by the auditor that they were not necessary, in fact, under the circumstances. The auditor further reports that it did not appear that he, the defendant, ever gave her any specific instructions ; that he had no other agent ;

that his wife took care and got along at home by her own efforts and what money her husband furnished her from time to time. From this and other facts reported, it is evident the defendant contemplated his wife, in such small matters as are embraced in the plaintiff's account, would exercise her judgment and discretion. If she had paid for the grave stones out of the money the defendant sent her, and borrowed the money in question to buy the flour, there can be no doubt but it would have charged the husband. The using of some of the money sent as she did, and replacing it. with the money borrowed, is the same in effect, and was within the scope of her agency, and the plaintiff had a right so to understand it. There was an agency *in fact*, and what she did was within the scope of her *apparent* agency. The item of forty cents for horse to Wells River must be regarded as embraced within the domestic affairs entrusted to her charge, without proof of the actual necessity for it at the time. No question is made as to any. other items, except item for the halter which is not before us as the plaintiff did not except.

Judgment affirmed.